THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
OXFORD DIVISION

| | |
|---|---|
| RODNEY JONES and wife,<br>DEANGELA BATTLE<br><br>    Plaintiffs,<br><br>vs.<br><br>THE RAYMOND CORPORATION,<br><br>    Defendant | CIVIL ACTION<br>FILE NO.: 3:20cv308-MPM-RP |

## COMPLAINT
### (Jury Trial Demanded)

COME NOW the Plaintiffs, Rodney Jones, and wife, Deangela Battle, by and though their attorneys, Merkel & Cocke, P.A., and Warshauer Law Group, P.C., and exhibit their Complaint against the Defendant, The Raymond Corporation, and would show unto the Court the following, to-wit:

### Parties

1. The Plaintiffs, Rodney Jones (hereinafter "Plaintiff" or "Rodney") and his wife, Deangela Battle, are adult residents of Shelby County, Tennessee.

2. The Defendant, The Raymond Corporation (hereinafter "Raymond" or "Defendant"), is a New York Corporation with its principal place of business located at 20 South Canal Street, Greene, New York 13778, and may be served with process upon its registered agent Corporation Service Company, 80 State Street, Albany, New York 12207-2543.

## Jurisdiction and Venue

3. Upon information and belief, Raymond is not incorporated nor does it have its principal place of business in the State of Mississippi. This Court has jurisdiction of this matter pursuant to Title 28 U.S.C. § 1332(a) inasmuch as all of the opposing parties are, for jurisdictional purposes, citizens of different states and the amount in controversy exceeds the sum of seventy-five thousand dollars ($75,000.00), exclusive of interest and costs.

4. Pursuant to Title 28 U.S.C. § 1391(a)(2) and (c), venue is proper in the Oxford Division of the Northern District of Mississippi inasmuch as the August 29, 2019, accident giving rise to this lawsuit in which Plaintiff Rodney Jones was seriously injured occurred at a plant owned/operated by non-party FedEx Supply Chain, Inc. (hereinafter "FSC"), maintained and located at 302 Legacy Boulevard, Olive Branch, DeSoto County, Mississippi.

5. Pursuant to *Miss. Code Ann.* § 13-3-57, Mississippi's long arm statute, Defendant Raymond is subject to personal jurisdiction in Mississippi inasmuch as Defendant Raymond committed a tort in whole or in part within Mississippi and is also doing business in Mississippi.

## Facts

6. Prior to the accident at issue, Plaintiff Rodney Jones was employed by a temp agency who contracted Plaintiff Rodney Jones out to operate a lift truck at the subject FSC warehouse.

7. On or about August 29, 2019, Plaintiff Rodney Jones was performing his normal and ordinary duties as a lift truck operator at the FSC warehouse when the Raymond lift truck he was operating crashed (hereinafter the "accident").

8. During this accident, through no volitional or intentional conduct of Plaintiff Rodney Jones, Rodney Jones' left foot was caused to leave the operators' compartment of the lift truck.

9. During the injury causing accident, because the lift truck did not prevent the movement of Plaintiff Rodney Jones' left foot and leg from the safety of the operator's compartment to outside of the compartment, his left leg was crushed.

10. Raymond designed and manufactured the lift truck being operated by Plaintiff Rodney Jones at the time of the accident.

11. The lift truck, as designed and manufactured, did not have a rear operator compartment safety door provided as standard equipment.

12. Customers for lift trucks should be able to reasonably rely upon Raymond to provide lift truck products equipped with necessary safety features for use in a reasonably safe manner at the FSC warehouse.

13. Raymond manufactures an easy open safety door, which it markets as a Rear Operator Guard and sells as an option.

14. The Rear Operator Guard is designed to retain operators within the lift truck during mishaps like the accident in question.

15. There are other designs of rear doors that would also have protected Plaintiff Rodney Jones from being injured in addition to the Rear Operator Guard sold by Raymond.

16. Raymond not only fails to provide the Rear Operator Guard as standard equipment, but negligently fails to promote its inclusion when advising potential customers and, to the contrary, advises potential customers and provides materials asserting that the Rear Operator Guard door:

+ May hinder or slow the operator's escape from the truck and significantly increase the chance of a serious injury in the event of a tip over or off the dock incident;

+ Increase chance of amputation or serious injury of operator's foot and/or leg if operator has partially exited the compartment when a rear crash occurs;

+ Increased chance of injury when operator is trapped or stuck by a damaged guard or crushed by a collapsed door pushed into the compartment;

+ Increase heat build-up in compartment, which encourages improper use of the guard;

+ Increase pinch or catch points for racking, product, operator's body or clothing;

+ Contributes to operator discomfort; and

+ Will increase aisle width requirements and/or reduce operating clearances.

Raymond is aware at the time it makes these representations that the statements do not have valid scientific or engineering support.

17. In the normal operator position proscribed for use by operators of Raymond lift trucks, the operator is to have his left hand on the steering tiller, his right hand on the multifunction control, his right foot on the floor depressing a pedal in order to keep a brake from being applied, his left foot on the floor, but there is no pedal under the operator's left foot, and his back against the backrest.

18. The Raymond lift truck provides a single deadman/brake pedal on the floor of the operator compartment, located where it is most likely to be operated by the operator's right foot and no deadman brake sensor is provided under the operator's left foot to stop the lift truck in response to the left foot leaving the floor of the operator's compartment where it must be located to be consistent with the normal operating position for use of the forklift. Accordingly, the operator's left foot can leave the floor of the compartment without affecting the operation of the lift truck.

19. Raymond is aware that if the operator's left foot leaves the operator's compartment while the lift truck is moving, he has left the normal operation position, and that this can lead to a loss of balance and an unreasonable and extremely hazardous condition will exist if the truck does not stop before colliding with another object.

20. If the operator leaves the normal operating position prescribed by Raymond by not leaning against the back rest, he can do so without affecting the operation of the lift truck.

21. Raymond is aware that if the operator does not lean against the back rest with sufficient force, while the lift truck is moving, this can lead to a loss of balance and an unreasonable and extremely hazardous condition will exist if the truck does not stop before colliding with another object.

22. Given the usually expected human behavior of an operator, when the operator is confronted with an unexpected challenges to balance while operating the Raymond lift truck, as is foreseeable to occur in warehouse operations, the operator is likely to broaden his stability base which will foreseeably involve moving the operator's left foot to their left in response to, and/or in anticipation of, the deceleration of the lift truck and his own continuing momentum, as part of his response controlled by and initiated by his automatic involuntary balance system, causing the foot to go out of the operator's compartment because the floor does not have width to allow anything but the most minimal movement without inadvertently causing the foot to drop below the floor carrying the operator's body with it resulting in a loss of balance and ejection from the compartment.

23. The loss of balance by the operator is a foreseeable cause of left leg crush injuries..

24. The most common injury causing mishap for standup lift truck operators is left leg crush injuries.

25. Raymond is aware that muscular responses to unexpected challenges to balance are not voluntary any more than are most movements required to maintain balance.

26. It is foreseeable and expected by Raymond that in response to the actual and expected forces experienced by the operator during deceleration and loss of control, during a rearward movement, that the operator will, despite training and personal expectations of the operator to the contrary, broaden his base of stability to maintain his balance – even before his center of gravity goes outside his stability base.

## Liability

27. Defendant Raymond is liable to Plaintiff Rodney Jones as a product manufacturer and seller pursuant to *Miss. Code Ann.* § 11-1-63 and under Mississippi Common Law theories of strict liability, negligence, and breach of warranty.

### *Count I – Defective Design – Product Liability*
### *Pursuant to Miss. Code Ann. § 11-1-63*

28. Plaintiff Rodney Jones incorporates herein by reference all other paragraphs of this Complaint.

29. Defendant Raymond designs, manufactures, markets, and sells lift trucks for use and consumption, and Defendant Raymond designed, manufactured, marketed, and sold the subject lift truck.

30. The subject lift truck's defects include, but are likely not limited to, defects in its design and manufacture taken individually and collectively because it did not provide as standard equipment a system to prevent Plaintiff Rodney Jones' left leg from extending from the safety of the operator's compartment to outside the lift truck where it could be crushed or otherwise injured. The lift truck also failed to incorporate a design that would have prevented the lift truck from operating while Plaintiff Rodney Jones' left foot was not on the floor of the lift truck and was

outside the operator's compartment and when his back did not have sufficient force against the backrest to insure that he did not lose his balance.

31. The subject lift truck was also defective because to the extent safety features were available as options, Defendant's warnings and instructions in the form of sales materials were false and misleading and discouraged the purchase of safety options by a potential customer. Because of these defects, the subject lift truck was sold and delivered in an unreasonably dangerous condition to a person who might reasonably be expected to use or be affected by the product.

32. After the initial sale of the lift truck, Defendant was exposed to knowledge of additional left leg injuries associated with its design choices, and should have learned (if it did not know already) that the science upon which it relied was not reliable, but did not warn users and owners of such defective condition of the subject lift truck as well as lift trucks of substantially similar design and of the need to modify the lift trucks to prevent injuries like that suffered by Plaintiff Rodney Jones.

33. The subject lift truck was defective at the time it was sold by Defendant Raymond and at the time it left Defendant Raymond's control.

34. The subject lift truck was expected to reach the user without substantial change in the condition in which it was sold.

35. The subject lift truck did reach the user without substantial change in the condition in which it was sold.

36. Plaintiff Rodney Jones was a person who would reasonably be expected to use or be affected by the subject lift truck, and Plaintiff Rodney Jones used the subject lift truck in a safe and/or foreseeable fashion.

37. Raymond knew, or in light of reasonably available knowledge or in the exercise of reasonable care should have known, about the dangers that caused the damage for which recovery the Plaintiffs seek, the lift truck failed to function as expected, and there exist feasible design alternatives that would have, to a reasonable probability, prevented the harm to Plaintiff Rodney Jones, without impairing utility, usefulness, practicality or desirability of the lift truck to users or consumers.

### Count II – Failure to Warn – Product Liability
### Pursuant to Miss. Code Ann. § 11-1-63

38. Plaintiff Rodney Jones incorporates herein by reference paragraphs 6 through 26 of this Complaint.

39. At the time the lift truck left the control of Defendant Raymond, the lift truck was defective because it failed to contain reasonable safety features and did not provide adequate warnings of the defects. The defective conditions rendered the product unreasonably dangerous to any user. Plaintiff Rodney Jones was a user of the Raymond lift truck, and the defective and unreasonably dangerous condition of the lift truck proximately caused Plaintiff Rodney Jones' injuries and damages for which recovery is sought. Adequate warning signage should have been conspicuously placed on the lift truck in or around the operator's compartment of the lift truck Plaintiff Rodney Jones was using.

40. Had warning signage been placed as described, Plaintiff Rodney Jones would have seen the signage and been alerted to the dangers associated with the lift truck which were known to exist by Raymond but which were not realized by Plaintiff Rodney Jones, an ordinary, foreseeable user of the lift truck, and Plaintiff Rodney Jones would have heeded the warnings and avoided injury.

41. At the time the lift truck left the control of Raymond, it knew, or in light of reasonably available knowledge should have known, about the danger that caused the damage for which recovery is sought herein and failed to warn of the same while Plaintiff Rodney Jones, as an ordinary user or consumer, did not realize the dangerous condition of the lift truck.

### *Count III – Negligence*

42. Plaintiff Rodney Jones incorporates herein by reference paragraphs 6 through 26 of this Complaint.

43. Raymond knew, or should have known, in the exercise of ordinary care, that the lift truck, as improperly and defectively designed, was an extremely hazardous and dangerous instrumentality, but in disregard of its duties, Raymond caused and allowed the lift truck to enter the stream of commerce in an unsafe and defective condition and negligently breached the duties it owed to the Plaintiffs by:

+ By failing to install on the lift truck a system to prevent Plaintiff Rodney Jones' left leg from involuntarily being extended from the safety of the operator's compartment to the outside of the lift truck where it could be crushed or otherwise injured;

+ By failing to design the lift truck in a way that would prevent Plaintiff Rodney Jones' foot from getting outside of the lift truck;

+ By designing the lift truck in such a manner as to allow it continued movement despite the fact that Plaintiff Rodney Jones was not in the normal operator's position;

+ By failing to provide safety features on the lift truck that were available;

+ By providing warnings and instructions in the form of sales materials that were false and misleading and discouraged the purchase of such safety options;

+ By failing to modify the lift trucks to prevent injuries like those suffered by Plaintiff Rodney Jones when Raymond learned of additional left leg injuries associated with its design choices and by failing to warn users and owners of its lift truck products of this knowledge; and

+ By failing to provide adequate warnings on, and with, the lift truck.

44. Had the lift truck been manufactured according to these specifications, injury to Plaintiff Rodney Jones would not have occurred.

### *Count IV – Breach of Express Warranties by Affirmation, Promise, Description, Sample*
### *Pursuant to Miss. Code Ann. §§ 11-1-63 and 75-2-313*

45. Plaintiff Rodney Jones incorporates herein by reference paragraphs 6 through 26 of this Complaint.

46. Raymond breached express warranties which were provided to FSC for whom the lift truck was designed and manufactured when it impliedly warranted to FSC and its employees, including Plaintiff Rodney Jones, that the lift truck was safe to be used in warehouses. Defendant Raymond breached both expressed warranties, pursuant to *Miss. Code Ann.* § 75-2-313 and 11-1-63, as amended, which were provided to FSC for whom the lift truck was designed and manufactured. Plaintiff Rodney Jones was a foreseeable user and intended beneficiary of the express warranties of the lift truck and was injured as a result of Defendant's breach of warranties. FSC relied on Defendant's skill and judgment to design and manufacture a lift truck that was merchantable and fit for FSC's particular purpose as described in this Complaint. The Raymond lift truck was neither merchantable nor fit for said purpose, resulting in Plaintiff Rodney Jones's injuries and damages.

### *Count V – Breach of Implied Warranty for Merchantability*
### *Pursuant to Miss. Code Ann. § 75-2-314(1)*

47. Raymond breached implied warranties pursuant to *Miss. Code Ann.* § 75-2-314(1), as Raymond is a merchant selling products such as the lift truck, and when it did so, a warranty that the lift truck was merchantable and fit for its intended purpose is implied in the contract for this sale. Therefore, implied warranties of merchantability and fitness for purpose are implied in the contract for the purchase and sale of the lift truck. The lift truck, for reasons stated above, failed

such warranties in that it was not fit to safely perform the purpose of a lift truck and being unsafe or dangerous was not merchantable.

### *Count VI – Breach of Implied Warranty of Fitness for Particular Purpose Pursuant to Miss. Code Ann. § 75-2-315*

48. At the time of the purchase of the lift truck, Raymond knew, or had reason to know, that the lift truck was being purchased for the particular purpose to lift and transport materials short distances and employees of those who purchase such lift truck, such as Plaintiff Rodney Jones, were relying on Raymond's skill and judgement to select and furnish a suitable lift truck. Therefore, there was an implied warranty that the lift truck would be fit for such purpose, pursuant to *Miss. Code Ann.* § 75-2-315, as amended. The warranty for reasons previously asserted was breached when the lift truck was provided in dangerous and defective conditions.

### *Count VII – Strict Liability in Tort*

49. As stated, Raymond manufactured the lift truck in question.

50. Raymond is in the business of manufacturing and selling lift trucks.

51. Raymond sold the lift truck in question to FSC.

52. Raymond knew that the lift truck in question would be used to lift and transport materials for short distances, and thus, would travel in warehouses.

53. At the time the lift truck left the control of Raymond, if was defectively designed and was accordingly unreasonably dangerous to those who would be using the lift truck, including Plaintiff Rodney Jones, for reasons set forth herein above.

54. When Plaintiff Rodney Jones was operating the lift truck in question, it was in the same condition it was in when it left Raymond's control.

### **Damages**

55. Plaintiff Rodney Jones incorporates herein by reference all other paragraphs of this Complaint.

56. As a direct and proximate result of the actions of the Defendant as aforesaid, the Plaintiff Rodney Jones has sustained the following damages:

+ All medical and hospital expenses incurred as a result of his injuries;

+ Any and all future medical expenses and prosthetic which are reasonably certain to be incurred;

+ Permanent impairment and physical disability, past, present, and future;

+ Mental and emotional distress and suffering, past, present, and future;

+ Physical pain and suffering, past, present, and future;

+ Loss of enjoyment of life;

+ Disability;

+ Loss of wage-earning capacity;

+ Lost wages to date of trial; and

+ All other losses arising from the aforesaid incident.

### *Loss of Consortium*

57. Plaintiff Deangela Battle, at all relevant times, was and is the wife of Plaintiff Rodney Jones. Plaintiff Deangela Battle, as wife of Plaintiff Rodney Jones, seeks all damages allowed under Mississippi law for loss of consortium as a result of the injuries to her husband.

### *Punitive Damages*

58. Plaintiff Rodney Jones incorporates herein by reference all other paragraphs of this Complaint.

59. Defendant is aware that hundreds of users of its similar lift trucks, designed and intended exclusively for warehouse use have suffered lower extremity injuries as a result of

extremities being exposed to crush injuries. Defendant has refused to sell a safety door as a standard feature to protect operators in foreseeable loss of balance events in reliance on dissimilar off-dock and tip-over events in lift trucks that did not have doors and thus were not substantially similar to lift trucks with doors, and on ATD recreations of off-dock and tip-over events which it knows are not valid science, using dissimilar lift trucks, which were created for litigation purposes, and which do not reflect what is likely to happen to human users. At the same time, it was making false representations, Defendant was aware of the perfect safety records of users of standup lift trucks with doors relating to the protections and risks associated with safety doors. Despite this knowledge, Defendant has stubbornly refused to modify its design to eliminate this risk and instead has continued to sell these lift trucks that are in a defective and unreasonably dangerous condition. Its continued sale of the products, and false representations to governments, courts, customers, standards organizations and others that it has valid testing demonstrating that doors are dangerous and its failure to recall or warn of the dangerous propensities of the design of the subject Raymond lift truck, and those of similar design and expected use, after it knew or should have known of the defects and dangers, exhibits an entire lack of care and a conscious disregard for the safety of humans who use Defendant's lift trucks.

60. After the initial sale of the Raymond lift truck, Defendant continued to learn of additional left leg injuries associated with its design choices, and learned (if it did not know already) that the science upon which it relied was not reliable, but refused to warn users and owners of defects in its lift truck products like the subject Raymond lift truck as well as lift trucks of substantially similar design and of the need to modify the lift trucks to prevent injuries like that suffered by Plaintiff Rodney Jones.

61. As a direct and proximate result of Defendant's wrongful conduct, Plaintiff Rodney Jones is entitled to judgment against Defendant for exemplary damages to deter similar conduct in the future and to punish Defendant for its wrongful acts, in an amount to be determined by the enlightened conscience of the finder of fact.

WHEREFORE, PREMISES CONSIDERED, the Plaintiffs, Rodney Jones, and wife, Deangela Battle, seek damages of, from, and against the Defendant, The Raymond Corporation, in an amount exceeding the minimal jurisdictional limits of this Court, plus pre-judgment interest from the date of the accident and post-judgment interest and costs occurred herein and such other relief to which the Plaintiffs may be entitled.

The Plaintiffs respectfully demand a trial by jury on all issues so triable.

THIS, the 13 day of November, 2020.

Respectfully submitted,

MERKEL & COCKE, P.A.
Post Office Box 1388
Clarksdale, Mississippi 38614
Phone No.: (662) 627 – 9641
Fax No.: (662) 627 – 3592

By: /s/ 
Charles M. Merkel, Jr. (MSB #2884)
Edward P. Connell, Jr. (MSB #10647)
Yeager M. Bass (MSB #106098)

WARSHAUER LAW GROUP, P.C.
2740 Bert Adams Road
Atlanta, GA 30339
(404) 892-4900
(404) 892-1020 Fax

By: /s/ Michael Warshauer by EPCJ w/ permi
Michael J. Warshauer (GB #018720)
Trent Shuping (GB #159083)
*To Be Admitted Pro Hac Vice*